<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MICHAEL PADILLA,** | : |
| Plaintiff, | : Civil Action No. 14-1828 |
| v. | : OPINION |
| **COMMISSIONER OF SOCIAL SECURITY,** | : |
| Defendant. | : |

**SALAS, DISTRICT JUDGE**

## I. INTRODUCTION

Michael Padilla ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner") denying him Retirement Insurance Benefits ("RIB") under Title II of the Social Security Act (the "Act"). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g) and decides the motion upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. Because substantial evidence supports the Commissioner's determination that Plaintiff has not established he is an alien lawfully present in the United States, the Court affirms the Commissioner's decision.

## II. FACTUAL & PROCEDURAL BACKGROUND

On May 25, 2011, Plaintiff applied for RIB, contending that he was entitled to benefits as of July 2011 because he was no longer working. (D.E. No. 9, Administrative Record ("Tr.") at 24-29). Plaintiff's application was denied, initially and on reconsideration, because he failed to establish his age or his status as either a United States citizen or an alien lawfully present in the

United States. (*Id.* at 33-35, 37-39, 41-43). The Social Security Administration ("SSA") informed Plaintiff of the following:

> SSA submitted all the documents you presented to the United States Citizenship and Immigration Services located in Buffalo, NY.
>
> The agency replied back informing us that the documents you submitted are not valid forms used as proof of your legal status in the USA. [The United States Citizenship and Immigration Services] would like you to go to your local Immigration office with original immigration documents to obtain a current and valid ID.
>
> You may explain your situation to Immigration andsomeone [sic] there will assist you.
>
> Once you have resolved the issue of your status in the USA you may go to your local SSA office and re-apply for Retirement benefits.

(*Id.* at 37). The notice also advised that Social Security law forbids SSA from paying benefits for any month that a beneficiary is not lawfully present in the United States; rather, to receive benefits, the beneficiary must be a United States citizen or national or meet the Attorney General's definition of an alien lawfully present in the United States. (*Id.* at 38).

On March 9, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 44). On March 12, 2012, the SSA Field Office reported that Plaintiff had provided sufficient proof of his age but failed to establish proof of his "citizenship." (*Id.* at 46).

Plaintiff testified at a hearing before ALJ Richard West on July 10, 2012. (*Id.* at 76-96). In the resulting July 17, 2012 decision, the ALJ found that Plaintiff was not entitled to RIB because he had not established that he was an alien lawfully present in the United States under Pub. L. No. 104-193. (*Id.* at 8-17). Otherwise, the ALJ determined that Plaintiff had proved his age in accordance with 20 C.F.R. § 404.716. (*Id.* at 14).

On August 24, 2012, Plaintiff requested that the Appeals Council review the ALJ's decision, asserting that the ALJ had not subpoenaed records as Plaintiff requested. (*Id.* at 7). On

January 14, 2014, the Appeals Council denied Plaintiff's application for review, noting that the record did not show Plaintiff ever made a subpoena request and that Plaintiff, in his application for review, had failed to describe the documents that he wanted subpoenaed. (*Id.* at 2-4). Upon the Appeals Council's denial, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

On March 21, 2014, Plaintiff initiated this action and requested to proceed *in forma pauperis*. (*See* D.E. No. 1). Plaintiff's request to proceed *in forma pauperis* was granted on July 16, 2014. (D.E. No. 3). The Commissioner filed an answer to the complaint on October 2, 2014. (D.E. No. 8). On February 19, 2015, Plaintiff submitted a one-page letter brief in support of his position. (D.E. No. 13, Brief ("Pl. Mov. Br.")). The entirety of Plaintiff's argument is that he "hopes a jury of his peers will accept his position that when [he] was made a ward of the state of New York in 1961 and sent to an orphanage he had no willful intent to be an illegal immigrant and he is not undocument [sic] and intitled [sic] to receive his retirement benefits." (*Id.*). On April 7, 2015, the Commissioner filed a brief in opposition, arguing that substantial evidence supports the ALJ's determination that Plaintiff had not sufficiently established lawful presence in the United States. (D.E. No. 14-1, Defendants' Brief Pursuant to Local Civil Rule 9.1). Plaintiff did not file a reply.

The matter is now ripe for adjudication.

## III. LEGAL STANDARD

### A. Standard for Awarding RIB

An individual is entitled to RIB if that individual has accumulated sufficient Social Security earnings to be "fully insured," if the individual is at least 62 years old, and if he or she has applied for benefits. 8 U.S.C. § 402(a); 20 C.F.R. § 404.310. However, an alien may not be

paid benefits "for any month during which such alien is not lawfully present in the United States as determined by the Attorney General." 8 U.S.C. § 402(y).

The "lawfully present" language, which appears in the statutes specifically governing RIB benefits, is also present in a statute that outlines general eligibility requirements for aliens to receive federal public benefits. *See* 8 U.S.C. § 1611. Under subsection (a) of that statute, "an alien who is not a qualified alien . . . is not eligible for any Federal public benefit," but under subsection (b)(2), an exception states that "[s]ubsection (a) . . . shall not apply to any benefit payable under title II of the Social Security Act [42 U.S.C. § 401 *et seq.*] to an alien who is lawfully present in the United States as determined by the Attorney General." 8 U.S.C. § 1611(a), (b)(2).

The Attorney General, through regulations promulgated by the Department of Homeland Security ("DHS"), has defined the phrase "an alien who is lawfully present in the United States" to mean "[a] qualified alien as defined in 8 U.S.C. 1641(b)." 8 C.F.R. § 1.3(a)(1). In turn, a qualified alien

> means an alien who, at the time the alien applies for, receives, or attempts to receive a Federal public benefit, is –
>
> (1) an alien who is lawfully admitted for permanent residence under the Immigration and Nationality Act [8 U.S.C. 1101 et seq.],
> (2) an alien who is granted asylum under section 208 of such Act [8 U.S.C. 1158],
> (3) a refugee who is admitted to the United States under section 207 of such Act [8 U.S.C. 1157],
> (4) an alien who is paroled into the United States under section 212(d)(5) of such Act [8 U.S.C. 1182 (d)(5)] for a period of at least 1 year,
> (5) an alien whose deportation is being withheld under section 243(h) of such Act [8 U.S.C. 1253] (as in effect immediately before the effective date of section 307 of division C of Public Law 104–208) or section 241(b)(3) of such Act [8 U.S.C. 1231 (b)(3)] (as amended by section 305(a) of division C of Public Law 104–208),
> (6) an alien who is granted conditional entry pursuant to section 203(a)(7) of such Act [8 U.S.C. 1153 (a)(7)] as in effect prior to April 1, 1980;  or
> (7) an alien who is a Cuban and Haitian entrant (as defined in section 501(e) of the Refugee Education Assistance Act of 1980).

8 U.S.C. § 1641(b) (brackets in original and footnotes omitted).

SSA's Program Operations Manual System ("POMS"), which details SSA's internal procedural guidelines, *see generally* SOCIAL SECURITY ADMINISTRATION, PROGRAM OPERATIONS MANUAL SYSTEM [hereinafter POMS], explains the procedure and documents necessary to establish "lawfully present" status for each of the above categories of "qualified alien," POMS, RS 00204.025(B) - Evidence Requirements for Establishing U.S. Lawful Presence (effective Oct. 8, 2014) [hereinafter *Evidence Requirements*], *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0300204025; *see also* POMS, SI 00502.130 – Documentary Evidence of Qualified Alien Status (effective Mar. 17, 2010), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0500502130#b2.

In general, an alien's lawful presence is established upon the alien's submission of an acceptable immigration document and SSA's verification of that document with DHS via the Systematic Alien Verification for Entitlements ("SAVE") program. POMS, RS 00204.020(C) – Developing Lawful Presence of an Alien in the U.S. (effective May 7, 2013) [hereinafter *Developing Lawful Presence*], *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0300204020; *Evidence Requirements*, at (B)(1). "An 'acceptable' document means that it is the right form as indicative of a particular alien lawfully present status (*e.g.*, an I-551 for [Lawfully Admitted Permanent Residents ("LAPR")]) and it is a document that meets SSA's standard for probative value (*i.e.*, [SSA] can tell that it's authentic)." *Developing Lawful Presence*, at (C).

Potential acceptable documents are numerous and vary according to the specific qualified alien category in which an individual might fall; for example, I-551 cards are used to verify LAPR status and form G-845 is used to verify aliens granted conditional entry pursuant to the

Immigration and Nationality Act. *Evidence Requirements*, at (B)(1).  However, in any case, it is clear that "[o]nly original, unexpired DHS documents are acceptable." POMS GN 00303.400(A) – Authorized Alien Status (effective Aug. 1, 2013), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0200303400.

### B. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  The Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Thus, this Court is limited in its review in that it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (internal citation omitted).

### IV. DISCUSSION[1]

The issue before the Court is whether substantial evidence supports the ALJ's finding that Plaintiff had not established that he is an alien who is lawfully present in the United States, as determined by the Attorney General.  (Tr. at 16); *see* 8 U.S.C. § 1641(b)(1).

---

[1] As a preliminary matter, the Court notes that although Plaintiff requests a jury, (Pl. Mov. Br. at 1), he is not permitted one under the statute that authorizes this Court's review.  *See* 42 U.S.C. § 405(g).

6

A. *The ALJ's Decision*

In a decision dated July 17, 2012, ALJ West, after "careful consideration of the entire record," made the following findings:

1. The claimant was found not entitled to Title II retirement benefits based on a filing date of May 25, 2011 due to failure to establish alien lawful presence in the U.S.

2. The documentation submitted by the claimant concerning custody and placement when he was a minor child does not establish lawful presence as determined by the Department of Homeland Security.

3. The claimant is not entitled to [RIB] because he has not established lawful presence in the U.S. as an alien under P.L. 104-193 Section 401(a).

(Tr. at 16). ALJ West noted that while he had "no reason to question the sincerity of the claimant's testimony, the statute and the Programs Operational Manual provisions make clear [the] need for strict adherence to evidentiary requirements of lawful presence." (*Id.*).

B. *The Evidence in the Record*

Plaintiff's primary argument before the ALJ was that he was granted permanent residency status through a New York state court order that brought him into the custody of the state, and that he was thereafter assigned an alien registration number and a Social Security number. (*Id.* at 15). ALJ West considered the following evidence in reaching his decision.

a. Testimony

Plaintiff testified that he was born on June 20, 1949, (*id.* at 80), and has two siblings named Carlos Padilla and Claudia Padilla, (*id.* at 84). Although Plaintiff could not say when he came to the United States, he averred that he had lived in the United States "[s]ince I can remember." (*Id.* at 83, 88). According to Plaintiff's testimony, the Immigration Department took photographs of Plaintiff and his siblings and gave them alien registration numbers around the year 1962 or 1963, when they were placed in Lakeside School. (*Id.* at 84). Plaintiff testified that he has a Social

7

Security number but no "green card." (*Id.* at 89). However, Plaintiff stated, he had never had trouble working; indeed, he had provided employers with his Social Security number, they would "run it through Homeland Security and everything else like that," and "[i]t doesn't come back that [Plaintiff is] an illegal alien." (*Id.*). Similarly, Plaintiff averred that he had never had trouble obtaining a driver's license using New York state court documents that reflected he was, in the early 1960s, placed in the custody of the Department of Children's Welfare. (*See id.* at 83-84, 86-87).

Plaintiff obtained verification from "the Maturation Court" that his documents are authentic. (*Id.* at 87-88). But Plaintiff testified that, because the records regarding his alien registration number had not been accessed for "so many years," accessing those records might be problematic. (*Id.* at 85). Indeed, according to Plaintiff, although he had filed a request for his records pursuant to the Freedom of Information Act in 2002, he was told that "It's not even in our computers." (*Id.* at 85-86). Plaintiff testified to his belief that no other document existed or could exist in the government's possession that supported his claim. (*Id.* at 82, 91).

   b. <u>Documents</u>

SSA documents reflect that Plaintiff was born in Colombia in 1949, (*id.* at 36), although he did not have a birth certificate that confirmed his birthdate of June 20, 1949, (*id.* at 45). An SSA "Report of Contact" noted Plaintiff's contention that his United States citizenship commenced on August 1, 1959. (*Id.*).

Plaintiff submitted to SSA documents relating to early 1960s court proceedings that encompassed delinquency, neglect, and custody of Plaintiff and his siblings. (*Id.* at 19-23). On January 17, 1961, the State of New York's Domestic Relations Court of the City of New York (Children's Court Division) filed a petition alleging that Plaintiff was a delinquent child on the

8

ground that Plaintiff was a truant and had "deserted" his home on several occasions without is father's consent. (*Id.* at 19-20, 23). On April 13, 1961, the delinquent petition was dismissed and a neglect petition was filed. (*Id.* at 23). On June 23, 1961, a court adjudged Plaintiff a neglected child. (*Id.* at 69-70). On July 13, 1961, another delinquent petition was filed against Plaintiff, he was committed to Highland State School on August 3, 1961, and that commitment was vacated on January 12, 1962. (*Id.* at 23). Plaintiff and his siblings were ultimately placed in Lakeside School. (*Id.* at 71).

On November 28, 1962, the Office of Probation for the City of New York wrote a letter to Lakeside School asking whether the school would accept Plaintiff "on full commitment or additional remand." (*Id.*). Effective January 16, 1966, a New York state Family Court extended Plaintiff's placement in Lakeside School for one year. (*Id.* at 72-73). On January 15, 1967, Lakeside School recommended that Plaintiff be placed in the custody of the Commissioner of Welfare of the City of New York, and that Plaintiff continue at Lakeside School. (*Id.* at 68). On the same day, Plaintiff was discharged to the custody of the Commissioner of Welfare. (*Id.* at 23). On May 12, 1967, the Department of Welfare authorized Plaintiff's admission to the foster care program. (*Id.* at 74).

In August 1967, the Acting Assistant District Director for Investigations of the United States Department of Justice Immigration and Naturalization contacted Lakeside School, asking for photographs of Plaintiff and his siblings to be used in an investigation of their immigration status. (*Id.* at 18). The Acting Assistant District Director also asked for information regarding their current situation at Lakeside School. (*Id.*).

No documents in the record are dated between 1968 and 2010.

After Plaintiff filed for RIB, SSA sought to verify Plaintiff's alien status via DHS's SAVE

9

program. (*Id.* at 36, 45). On June 8, 2011, SSA submitted to the United States Citizenship and Immigration Services ("USCIS") all of the documents that Plaintiff presented along with his application for RIB. (*Id.* at 30-31, 37). In response, USCIS indicated that no determination could be made from the information Plaintiff had submitted, and requested that Plaintiff submit a copy of his original alien registration records and resubmit the documentation. (*Id.* at 31). Specifically, USCIS stated:

> Please advise [sic] applicant to local USCIS office with original immigration document to obtain current, valid DHS issued immigration document. Then advise applicant to submit new G-845. Thank you!
>
> *Valid DHS issued immigration documents for verification are: I-94, Temp. I-551 Stamp, I-551, I-766, I-20, DS2019, Naturalization Certificate, etc.* Thank you!

(*Id.*).

SSA subsequently informed Plaintiff that his records did not contain information that he was either a U.S. citizen or an alien lawfully present in the United States, that SSA required proof of such status to pay RIB, and that Plaintiff should provide original immigration documents to his local "Immigration office" to obtain proper documentation. (*Id.* at 37). Once that issue was resolved, he could return to his local SSA office and re-apply for RIB. (*Id.*).

### C. ALJ West's Conclusion is Supported by Substantial Evidence

As detailed by the Commissioner, an alien who is not a "qualified alien" within the meaning of 8 U.S.C. § 1641 is generally ineligible to receive federal public benefits, including RIB. 8 U.S.C. § 1611(b)(2); 42 U.S.C. § 402(y). As detailed above, POMS requires that qualified alien status be proved by evidence consisting of specific documents in original form in order for SSA to pay benefits to an individual seeking RIB.

The Court agrees with the Commissioner's position that SSA is entitled to require acceptable immigration documents that establish an RIB applicant's current status, and to require

verification of that status by DHS before paying benefits. By verifying through DHS's SAVE program, the POMS directives "reflect the SSA's efforts to prevent document fraud, and to implement the requirements of 42 U.S.C. § 402(y) that only persons lawfully present in the United States are eligible for benefits," as required under the law. *Taylor v. Barnhart*, 399 F.3d 891, 897 (8th Cir. 2005).

Although "[t]he POMS does not have the force of law, . . . it is persuasive authority." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006) (citation omitted). Indeed, as the Supreme Court has stated, "administrative interpretations" such as POMS warrant respect, regardless whether they are "products of formal rulemaking." *See Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003); *see also Artz v. Barnhart*, 330 F.3d 170, 176 (3d Cir. 2003) (same); *Wilson v. Apfel*, 81 F.Supp.2d 649, 653 (W.D. Va. 2000) (noting that the POMS guidelines represent the Commissioner's interpretation of the governing statutes and regulations, and so are entitled to some deference). "[T]he POMS are entitled to respect as publically available operating instructions for processing Social Security claims." *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 951 (8th Cir. 2004) (internal quotation marks omitted).

As the record reveals, Plaintiff here submitted to SSA documents from the early 1960s reflecting court proceedings that dealt with Plaintiff's neglect and delinquency and Plaintiff's eventual placement in the custody of the Commissioner of Welfare of the City of New York. (*See* Tr. at 19-23). Plaintiff also submitted a 1967 letter that indicated Plaintiff was under investigation by the Immigration and Naturalization Services regarding his immigration status. (*Id.* at 18). SSA submitted those documents to USCIS, which advised SSA that no determination could be made as to Plaintiff's legal status from the information submitted. (*Id.* at 30-32). USCIS also described

exactly the procedure Plaintiff would have to follow in order to obtain verification; that is, securing a valid, DHS-issued immigrant document from the local USCIS office and resubmitting documentation. (*Id.* at 31).

In other words, USCIS concluded that Plaintiff's submissions do not constitute valid forms of proof of legal status. Plaintiff submitted essentially the same type of documentation to ALJ West. (*See id.* at 68-74). Tellingly, Plaintiff conceded in his testimony that no type of document existed or could exist in the government's possession that could support his claim. (*Id.* at 82, 91).

The Act clearly prohibits the payment of Title II benefits to an alien who is not lawfully present in the United States, as determined by the Attorney General. 42 U.S.C. § 402(y). DHS found that no determination could be made from the information provided by Plaintiff and advised that additional verification was needed. The ALJ therefore correctly found that Plaintiff's lawful presence in the United States, as defined by the Attorney General, was not verified by the documents. (Tr. at 10, 31-32, 36).

The Court finds that substantial evidence (or the lack thereof) supports the ALJ's determination. *See Richardson*, 402 U.S. at 401. Accordingly, the Court must affirm the ALJ's decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard*, 841 F.2d at 59.

## V. CONCLUSION

For the reasons stated above, the final decision entered by ALJ West is affirmed. An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**